UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60961-CIV-COHN/SELTZER

AMPA CAPITAL, LTD.,

    Plaintiff,

v.

SHLOMI ROZEN, a/k/a
SHLOMO ROZEN, and
EINAT ROZEN,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Ampa Capital Limited's Motion for Summary Judgment [DE 27] ("Motion"). The Court has carefully reviewed Plaintiff's Motion, the supporting record materials [DE 28], and Defendants' notice that they do not intend to respond to the Motion [DE 32], and the Court is otherwise fully advised in the premises.

**I.**    **Background**

    **A.**    **Material Facts**[1]

On August 19, 2009, Defendant Shlomi Rozen, a/k/a Shlomo Rozen, executed a promissory note (the "Note") in the amount of 7,528,806 New Israeli Shekels (about $1,970,000) on behalf of S.L.R. Printing, Ltd. ("S.L.R."). The Note was executed in favor of Hamit Trade Leasing and Finance Corp., Ltd. ("Hamit"), an Israeli corporation

---

[1] Because Defendants have not responded to the Statement of Material Facts in Plaintiff's Motion, see DE 27 at 2-5, the Court deems admitted the material facts recited by Plaintiff and supported by evidence of record. See S.D. Fla. L.R. 56.1(b).

that was later merged into Plaintiff Ampa Capital, Ltd. ("Ampa"). The Note provided that the principal amount due would be adjusted in accordance with the Israeli Consumer Price Index and that, in the event of default, the balance owed would be due immediately. By its terms, the Note could be assigned or transferred. The Note also contained a Guaranty clause, under which three individuals—including Shlomi Rozen—agreed to guarantee repayment of the Note. As relevant here, that clause provided that (1) the Guaranty would not be affected by any extension or other relief given to the maker of the Note (S.L.R.), and (2) the guarantors waived notice of a breach of the Note, as well as the right to a creditor's demand under Israeli law. See DE 27 (Pl.'s Statement of Material Facts) at 2, ¶¶ 1-5; DE 28-3 at 5-6.

On the same day that the Note and Guaranty were executed, both Shlomi Rozen and Defendant Einat Rozen (together, "the Rozens") signed a separate Deed of Guaranty, in which they guaranteed repayment of the Note to Hamit. The Rozens agreed to repay the Note in full, upon demand, without the need for Hamit to first seek repayment from S.L.R. or to sell collateral securing the Note. The Rozens further waived any right to the collateral, and they agreed that Hamit could release the collateral or waive any rights against S.L.R. without affecting Hamit's right to seek repayment from the Rozens. See DE 27 at 2-3, ¶¶ 6-12; DE 28-4 at 5-6.

Under the terms of the Note, S.L.R. agreed to make seventy-eight monthly payments by the twenty-fifth day of each month, starting on September 25, 2009. S.L.R. made a number of payments, but it failed to make the payment due on March 25, 2010. Since that default, S.L.R. has failed to make any further payments on the Note. See DE 27 at 3, ¶¶ 13-14; DE 28-3 at 5.

On April 26, 2010, Hamit was merged into Ampa, which continues to own and hold the Note and Guaranty.  Upon S.L.R.'s default, Ampa accelerated repayment of the Note and sought to collect the balance due.  In a good-faith attempt to mitigate its damages, Ampa initiated proceedings to sell certain equipment that was financed with a loan underlying the Note (the "Equipment").  Those proceedings were brought before the Execution Registrar, an Israeli court authorized to hear claims for enforcement of promissory notes and similar obligations.  Ampa notified S.L.R. of the proceedings and obtained its written consent—signed by Shlomi Rozen—to sell the Equipment in partial satisfaction of the debt.  See DE 27 at 3-4, ¶¶ 15-20.

On September 21, 2010, the Execution Registrar appointed a receiver to conduct the sale of the Equipment.  After the receiver obtained a high bid of 3 million shekels (plus tax) for the Equipment, S.L.R. consented in writing to the sale at that price.  In accordance with the order appointing him, the receiver obtained a professional appraisal of the Equipment.  The appraiser found that the actual value of the Equipment was 3.3 million shekels but that the "realization value" of the Equipment—apparently, the price for which it could be sold "as is" to a willing buyer—was 2.8 million shekels.  See DE 27 at 4, ¶¶ 21-24; DE 28-6 at 6-13.

On December 28, 2010, the receiver entered into an agreement with the third-party bidder to sell the Equipment for 3 million shekels.  Upon the receiver's motion, the Execution Registrar approved the sale of the Equipment.  Following the sale, Ampa credited the sale price against the amount owed under the Note.  S.L.R. has paid nothing further on the Note, and the Rozens left Israel without paying the balance due, which is at least 3,613,319 Shekels, or $943,131.65, plus interest since March 25, 2010.  See DE 27 at 5, ¶¶ 25-31; DE 28-6 at 3-5, 14-18.

**B.     Procedural History**

On May 21, 2012, Ampa filed this action against the Rozens, seeking to recover the outstanding balance on the Note.  See DE 1 (Compl.).  Ampa's Complaint originally pleaded claims for breach of the Note and Guaranty, money lent, unjust enrichment, and fraud in the inducement.  See id. at 2-4.  On December 5, 2012, the Court granted the Rozens' motion to dismiss the latter three claims, but denied the motion with respect to the claim alleging breach of contract.  See DE 21 at 4-8.

In holding that Ampa's breach-of-contract claim was viable, the Court found that under the plain language of the Guaranty and Deed of Guaranty, the Rozens were guarantors of payment (rather than guarantors of collection) and therefore that Ampa could seek recovery from them without first demanding repayment from S.L.R.  See id. at 4-5; Chicago Title Ins. Co. v. Lerner, 435 B.R. 732, 737 (S.D. Fla. 2010) ("A guarantor of payment is primarily liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty." (internal quotation marks omitted)).  The Court also rejected the Rozens' argument that Ampa had waived the Guaranty by selling some of the collateral without notice to the Rozens.  See Fla. Stat. § 679.611(2) (generally requiring that a secured party notify the debtor and secondary obligors before selling the debtor's collateral).[2]  The Court explained that "a violation of § 679.611(2) does not bar a subsequent suit on the Guaranty" but instead "shifts the burden to the creditor to show that the sale was commercially reasonable."  DE 21 at 5-6 (citing First Fla. Bank, N.A. v. Howard, 604 So. 2d 1286, 1287 (Fla. 5th DCA 1992)).  Further, the Court noted that Ampa "need not

---

[2]  The Court applied Florida law to Ampa's claims because Ampa had not pleaded Israeli law.  See Coyne v. Coyne, 325 So. 2d 407, 407 (Fla. 3d DCA 1976).

4

meet that burden on a motion to dismiss." Id. at 6.  In addition, the Court rejected the Rozens' contentions that Ampa had not shown a legal right to sell the collateral and had not established ownership of the Note.  See DE 21 at 6-7.

The Rozens subsequently filed an Answer denying liability.  See DE 26.  The Answer also pleaded affirmative defenses, including that the collateral sale was not commercially reasonable because the Rozens had not been notified of the sale. See id. at 2-3.  The Rozens admitted, however, that they had executed a guaranty of the Note.  See id. at 1-2, ¶¶ 3, 10.

On December 21, 2012, Ampa filed its present Motion for Summary Judgment, along with record materials supporting the Motion.  See DE 27, 28.  After the Rozens did not timely respond to Ampa's Motion, the Court ordered them to show cause why the Motion should not be granted.  See DE 31.  In response to the Order to Show Cause, defense counsel filed a document advising the Court that "after carefully reviewing the evidence in this case and discussing all possible defenses and possible outcomes with the defendants, the defendants purposefully are not filing a response to Plaintiff's Motion for Summary Judgment [DE 27]."  DE 32 at 1.

II.     Discussion

    A.     **Summary Judgment Standard**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a

6

genuine issue for trial." Id. at 249.  In making this determination, the Court must discern which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.  Moreover, in deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

      **B.**    **Analysis of Plaintiff's Motion**

In its Motion for Summary Judgment, Ampa contends that no genuine dispute of material fact exists concerning the Rozens' liability as guarantors of the Note and that Ampa is entitled to judgment against them for the outstanding balance of $943,131.65.  The Court agrees.

As detailed above, in the Guaranty and Deed of Guaranty, the Rozens guaranteed repayment of the Note, waived any condition that Hamit (Ampa's predecessor) first seek to collect from S.L.R., and further waived any rights regarding the sale of collateral.  See supra Part I.  More, the record indicates that Rozens received adequate notice of the sale of the Equipment—indeed, Shlomi Rosen consented to it on behalf of S.L.R.  And even if proper notice were lacking, the record shows that every aspect of the collateral sale was commercially reasonable.  See Fla. Stat. §§ 679.610, 679.611; Howard, 604 So. 2d at 1287.  The Rozens have offered no contrary evidence regarding any of these issues.  Therefore, the Court finds that the Rozens are liable as a matter of law for the unpaid balance on the Note, and that Ampa is entitled to summary judgment.

### III. Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Ampa Capital Limited's Motion for Summary Judgment [DE 27] is **GRANTED**;

2. The calendar call scheduled for February 21, 2013, is **CANCELLED**, and the case is removed from the Court's February 25, 2013, trial calendar; and

3. The Court will enter a separate Final Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 1st day of February, 2013.

_____
JAMES I. COHN
United States District Judge

Copies to:

Counsel of record via CM/ECF